UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KEITH SILVERA,

                                                    Plaintiff,

            vs.

JOHN BURGE, Superintendent,
Auburn Correctional Facility; SERGEANT          9:02-CV-882
WITHERS, Auburn CF; SERGEANT                    (J. Sharpe)
CHUTTY, Auburn CF; F. CALSCIBETTA,
Auburn CF; D. SPICER, Auburn CF; C.
PIDLYPHAK, Auburn, CF,

                                                    Defendants.
_____

APPEARANCES                                     OF COUNSEL

KEITH SILVERA
Plaintiff pro se
90-T-3701
Otisville Correctional Facility
P.O. Box 8
Otisville, New York 10963

ELIOT SPITZER                                   SENTA B. SIUDA
Attorney General of the                         Asst. Attorney General
State of New York
Attorney for Respondent
615 Erie Boulevard West, Suite 102
Syracuse, New York 13204-2455

GUSTAVE J. DI BIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the

Honorable Gary L. Sharpe, United States District Judge, pursuant to 28 U.S.C. §

636(b) and Local Rules N.D.N.Y. 72.3(c).

In this civil rights complaint, plaintiff alleges that defendants have violated

his right to freely practice his religion and have retaliated against him for the

exercise of his constitutional rights.

Plaintiff seeks substantial monetary relief.

Presently before the court is defendants' motion for summary judgment

pursuant to FED. R. CIV. P. 56. (Dkt. No. 37).  Plaintiff has responded in opposition

to the motion. (Dkt. No. 45).  For the following reasons, this court will recommend

granting the motion in part and denying it in part.

## DISCUSSION

### 1.   <u>Summary Judgment</u>

Summary judgment may be granted when the moving party carries its burden

of showing the absence of a genuine issue of material fact.  FED. R. CIV. P. 56;

*Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted).

"Ambiguities or inferences to be drawn from the facts must be viewed in the light

most favorable to the party opposing the summary judgment motion." *Id*.  However,

when the moving  party has met its burden, the nonmoving party must do more than

"simply show that there is some metaphysical doubt as to the material facts."

2

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). At that point, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id*. *See also Burt Rigid Box v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002)(citations omitted).

## 2.  <u>Facts</u>

Plaintiff alleges that on August 17, 2001,[1] he was in the mess hall at Auburn Correctional Facility (Auburn) preparing food, when defendant Calscibetta started to verbally abuse plaintiff, allegedly stating that Calscibetta "did not give a f... about Rastifarians or their religion." Complaint ¶ 13.  Plaintiff claims that although he tried to get away from defendant Calscibetta by going into another room, Calscibetta pursued plaintiff and continued to verbally harass him. Complaint ¶ 14. Plaintiff states that twenty minutes later, Calscibetta gave plaintiff a misbehavior report which was later dismissed. *Id.*  Plaintiff claims that after the dismissal of the August 17, 2001 misbehavior report, defendant Calscibetta threatened to "get" plaintiff and told other inmates that plaintiff was a "snitch." *Id.* ¶ 15.

Plaintiff states that a few days later, defendant Pidlyphak accused plaintiff of

---

[1] The complaint actually alleges that the date was July 27, 2001, however, plaintiff states in his memorandum in opposition to summary judgment that the date was actually August 17, 2001. Memorandum in Opposition (Dkt. No. 45) at 6.

stealing forks and salt. *Id.* ¶ 16.  Plaintiff states that Pidlyphak falsified a

misbehavior report regarding this incident,[2] resulting in a thirteen day loss of

recreation for plaintiff. *Id.*  On October 8, 2001, Officer Pidlyphak cancelled the

Rastafarian Negus Day Feast, after plaintiff had submitted all the proper paperwork.

*Id.* ¶ 17.  Plaintiff alleges that defendant Pidlyphak stated that "Rastifarians are

gangs," and he did not want them in the mess hall. *Id.*

   Plaintiff also alleges that defendant Pidlyphak was responsible for reducing

the number of cooks required for the Transfiguration Day Feast on November 3,

2001. Complaint ¶¶ 18-20.  Plaintiff had submitted his name along with five other

individuals as cooks for the event, but defendant Pidlyphak reduced the number to

three, even after the individuals had completed their medical clearance. *Id.*  Plaintiff

also alleges that when members of his family and other families arrived to attend

the feast, they were turned away. *Id.* ¶ 22.

   Plaintiff claims that during the event, it was discovered that there was food

missing, and it was later determined that defendant Pidlyphak was responsible for

stealing the food items. *Id.* ¶ 21.  Plaintiff alleges that he complained to Sergeant

Signor, who told plaintiff not to file a written grievance until Sergeant Signor could

---

[2] According to plaintiff, the misbehavior report alleged Tier II misbehavior, but the Review Officer reduced the charge to a Tier I offense and imposed the loss of recreation without giving plaintiff a hearing. Complaint ¶ 16.

investigate the incident. *Id.* ¶ 23.  Plaintiff claims that Sergeant Signor later told

plaintiff that his accusations against defendant Pidlyphak had been confirmed, and

that Sergeant Signor would take care of avoiding any further problems, but told

plaintiff to "let it go" because the officers could retaliate. *Id.* ¶ 24.

Plaintiff states in his complaint that he had been assigned to work in the mess

hall between 2000 and 2002.  Plaintiff further alleges that by December of 2001,

defendant Chutty told plaintiff that he should find another program because plaintiff

had filed a grievance against one of Chutty's best officers. Complaint ¶ 25.

Plaintiff alleges that two weeks later, defendant Calscibetta confiscated plaintiff's

legal papers and placed plaintiff in keeplock confinement in an attempt to deprive

plaintiff of access to courts. *Id.* ¶ 26.

Plaintiff also alleges that on April 11, 2002, defendant Sergeant Withers told

defendant Spicer to search plaintiff's cell and fabricate a misbehavior report against

plaintiff. Complaint ¶ 27.  Plaintiff states that as a result of the cell search,

defendant Spicer removed and destroyed telephone records and affidavits from

plaintiff's cell. *Id.*  Plaintiff claims that this conduct was in retaliation for verbal

grievances that plaintiff had made against defendants Chutty, Pidlyphak, and

Calscibetta.

Based on the above alleged actions, plaintiff makes claims of religious

5

discrimination as well as claims of retaliation, both for the exercise of his religious rights and his right to petition the government by filing grievances.

## 2.    **<u>Respondeat Superior</u>**

Personal involvement is a prerequisite to the assessment of damages in civil rights actions. *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.), *cert. denied*, 434 U.S. 1087 (1978).  The doctrine of respondeat superior is inapplicable to section 1983 claims.  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973).

In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved, and thus be subject to individual liability, in a constitutional deprivation.  A supervisory official is said to have been personally involved if that official directly participated in the infraction.  *Id*.  A supervisory official is said to have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong.  *Id*.  Personal involvement of a supervisory official is said to exist if he or she created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue.  *Id*.  Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event.  *Id*.

6

Defendants argue that plaintiff has not alleged sufficient personal responsibility of Sergeant Withers and Superintendent Burge.  Defendants argue that the only claim against Sergeant Withers is that he authorized the search of plaintiff's cell and allegedly ordered defendant Spicer to file a false misbehavior report against plaintiff.  Defendants also claim that there is insufficient evidence that defendant Burge had personal responsibility for the alleged violations.  This court does not agree with either argument.

Plaintiff has submitted various letters to defendant Burge regarding the alleged harassment, written both by plaintiff and by civilians to whom plaintiff wrote complaining of the situation.  While generally, letters to superior officers are insufficient in themselves to show personal involvement,[3] defendant Burge responded *personally* to the civilian letters and was well aware of plaintiff's on-going complaints. Plaintiff's Exs. T at 2, V (Dkt. No. 45).  In fact, plaintiff received a copy of defendant Burge's response to Franz Hall of the Jamaican Embassy. Plaintiff then wrote another letter to defendant Burge commenting on Burge's response and reiterated his ongoing complaints of harassment. Plaintiff's Ex. A. Based on the amount of defendant Burge's personal contact with plaintiff's complaints, this court will not recommend granting summary judgment in his favor.

---

[3] *See Sealy v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997).

It is true that defendant Withers is only alleged to have authorized the search of plaintiff's cell.  However, plaintiff claims that the search of his cell and the confiscation of the legal materials in his cell were performed in retaliation for plaintiff's complaints against corrections officers.  The law is clear that there is no constitutional violation caused by the issuance of a false misbehavior report alone. *Freeman v. Rideout*, 808 F.2d 949, 953 (2d Cir. 1986), *cert. denied*, 485 U.S. 982 (1988).  However, any action done in retaliation for the exercise of a constitutional right, even if not unconstitutional in itself, states a viable constitutional claim. *Franco v. Kelly*, 854 F.2d 584, 588-90 (2d Cir. 1988).

In *Franco*, plaintiff alleged that defendants filed false misbehavior reports in retaliation for Franco's participation in an investigation by the New York State Inspector General. *Id.* at 586.  The court held, relying on its decision in *Morello v. James*, 810 F.2d 344 (2d Cir. 1987), that filing a false misbehavior report in retaliation for the exercise of a constitutional right rises to the level of a constitutional violation. *Franco*, 854 F.2d at 588-89.  If defendant Withers's decision to have plaintiff's cell searched was in retaliation for plaintiff's complaints about corrections officers, then he could be personally involved in plaintiff's alleged constitutional violation.  Thus, this court will not recommend dismissal as against defendant Withers for lack of personal involvement at this time.

3.    **Retaliation**

Plaintiff argues that defendants' actions were in retaliation for the exercise of plaintiff's right to practice his religion and for plaintiff's right to petition the government, specifically his right to file grievances against officers for harassment. Plaintiff essentially claims that he is attempting to practice his religion, and the defendants first discriminated against him because he is Rastafarian, then retaliated against him when he complained about the discrimination and harassment.

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for adverse action taken against him by defendants. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)(citing *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002); *Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir. 1997). The court must keep in mind that claims of retaliation are "easily fabricated" and thus, plaintiff must set forth non-conclusory allegations. *Id.* (citing *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001)[4]).

---

[4] The *Bennett* case indicates that *Dawes* was "overruled on other grounds" by *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), but this is apparently an error because a LEXIS search reveals that *Dawes* was not overruled by *Swierkiewicz*. It does not appear that *Dawes* was overruled at all.

9

The court in *Dawes* stated that in order to survive ***summary dismissal***, the

plaintiff's "non-conclusory" allegations must establish

> (1) that the speech or conduct at issue was protected, (2) that the
> defendant took adverse action against the plaintiff, and (3) that there
> was a causal connection between the protected speech [or conduct] and
> the adverse action.

239 F.3d at 492 (citations omitted).  Additionally, the retaliatory action must be

sufficient to "deter a similarly situated individual of ordinary firmness from

exercising his or her constitutional right." *Id.* at 493.

Although plaintiff in this case seems to allege that the officers retaliated

against him for both the practice of his religion ***and*** his grievance against

Calscibetta, the documents attached to plaintiff's response to the summary

judgment motion focus on alleged retaliation for the filing of a grievance against

Calscibetta on December 27, 2001.  Even the inmate affidavits that plaintiff submits

refer to alleged retaliatory actions after December 27, 2001, and specifically refer to

the grievance against Calscibetta as the cause of the alleged retaliation. Plaintiff's

Exs. O, P, Q.  The letter that plaintiff wrote to defendant Burge on March 8, 2002

specifically references alleged conduct occurring after the grievance:

> On or about December 28, 2001, I was taken from the facility to appear
> at a court hearing.  Upon my return on or about January 10, 2002 I was
> then constantly being harassed and threaten [sic] by the two (2)
> officers in question in retaliation to [sic] a grievance I had submitted

against Officer Calscibetta on or about December 27, 2001. Plaintiff's Ex. N.  Plaintiff also wrote letters to Abunna Ascento Foxe, a Rastafarian Chaplain and to Franz Hall, Deputy Consul General of Jamaica, who both wrote to defendant Burge asking for an investigation of the alleged harassment. Plaintiff's Exs. S, U.  Defendant Burge wrote back to these individuals stating that an investigation into the matter had shown that plaintiff's allegations of staff harassment were unfounded. Plaintiff's Exs. T at p.2, V.

The court also notes that of the five misbehavior reports plaintiff alleged were filed against him, four of them were dismissed as not supported by the evidence.  Three of them were filed after December 27, 2001, one on January 22, 2002 (Plaintiff's Ex. G); one on April 11, 2002 (Plaintiff's Ex. L); and the third on November 1, 2002 (Plaintiff's Ex. J).  The dismissals of the charges have also been attached to plaintiff's response papers. Plaintiff's Exs. H, L (at p.3), K.  In *Bennett*, the court found that plaintiff's claims of retaliation were "further supported" when the relevant adverse actions (misbehavior reports) were found to have been unjustified. 343 F.3d at 138.

The court in *Bennett* also stated that the temporal proximity between plaintiff's protected activity and the alleged retaliation provides "circumstantial evidence" of retaliation. *Id.* (citing *Gayle*, 313 F.2d at 683 (noting that the temporal

11

proximity of an allegedly retaliatory misbehavior report to a grievance may serve as circumstantial evidence of retaliation)).  Although this court notes that plaintiff alleges that Calscibetta had been harassing plaintiff since at least August 17, 2001, the date of the first misbehavior report that was dismissed, the other misbehavior reports followed shortly after the December 27, 2001 grievance and extended into late 2002.  Plaintiff then filed a harassment grievance on May 3, 2002 against Sergeants Chutty and Withers as well as Officers Calscibetta, Pidlyphak, and Spicer. Plaintiff's Ex. R.

Plaintiff alleges that he was threatened with more harassment if he did not "sign out" of his mess hall job.  In his March 8, 2002 letter to defendant Burge, plaintiff states that due to the harassment, he finally "signed out" of the mess hall. Plaintiff's Ex. N at p.2.  The misbehavior report dated April 11, 2002 involved defendant Withers's authorization of a frisk of plaintiff's cell by defendant Spicer. Plaintiff's legal materials were confiscated as contraband, but the charges were dismissed because the documents were affidavits from other inmates regarding a law suit. Plaintiff's Ex. L.

Defendants have submitted documents regarding this misbehavior report. Defendants' Ex. D-10-D-13.  It appears that defendant Withers received "confidential information" that plaintiff might be circulating a "petition", and that

12

defendant Spicer searched plaintiff's cell and found a three-page "letter" that he interpreted as a "petition", however, the evidence receipt indicates that the papers confiscated by defendant Spicer simply were three documents with "affidavit" written across the top. Defendants' D-16.  While ultimately it could be found that there was no retaliation for the exercise of plaintiff's right to file grievances, plaintiff has raised a question of fact regarding retaliation that this court finds should survive the motion for summary judgment.

As stated above, however, it appears that if any retaliation was occurring, it was alleged by plaintiff as retaliation for the exercise of his right to file grievances and not his right to practice his religion.  The only facts alleged by plaintiff regarding retaliation for the practice of religion are Calscibetta's alleged comments that he did not like Rastifarians.  Plaintiff never complained about this form of retaliation when he was writing to defendant Burge, and the inmates who submitted affidavits spoke about retaliation for the grievance filed against Calscibetta on December 27, 2001.  However, since this court is recommending that summary judgment be denied on the retaliation issue, the court finds that both bases for the claim of retaliation may survive.

**4.**   <u>**Religion**</u>

The court notes that plaintiff's complaint contains a separate claim of

religious discrimination, and alleges that this discrimination is shown by defendant Calscibetta because he verbally abused plaintiff, stating that Calscibetta did not care about Rastifarians or their religion. Complaint ¶ 13.  Plaintiff alleges that defendant Pidlyphak cancelled one Rastafarian feast because Rastifarians were "gangs" and Pidlyphak did not want "them" in the mess hall. Complaint ¶ 17.  Plaintiff also alleges that defendant Pidlyphak reduced the number of cooks for another Rastafarian feast and then turned away some of the family members who came for the event. Complaint ¶¶ 18-20, 22.  Finally, plaintiff alleges that defendant Pidlyphak took food that was reserved for the November 2001 feast.

The law is well-settled that inmates retain the right to free exercise of their religion. *Pugh v. Goord*, 184 F. Supp. 2d 326, 332 (S.D.N.Y. 2002)(citing *Cruz v. Beto*, 405 U.S. 319 (1972)).  This protection is ***not absolute***, and restrictions on the exercise of an inmate's religious beliefs are scrutinized under a less exacting standard than regularly applied to constitutional infringements. *Id.* at 332-33 (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987).  Additionally, verbal harassment alone does not rise to the level of a constitutional violation. *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986); *Ramirez v. Holmes*, 921 F. Supp. 204, 210 (S.D.N.Y. 1996).

A claim that a prison official cancelled an event, reduced the number of

14

cooks for an event, or turned away some individuals who arrived for an event, without more, does not rise to the level of religious discrimination.  Defendants allege that the restrictions that were imposed were imposed for security purposes or because the officials believed that less cooks were needed for a particular number of people who were attending an event.

Defendant Chutty has submitted an affidavit stating that the number of cooks was reduced based on the lack of necessity. Chutty Aff. ¶ 6. (Dkt. No. 40). Defendant Chutty also states that plaintiff believed that he was deserving of special privileges because he was a "facilitator" of his religious group, but that plaintiff's status did not entitle him to special privileges,[5] and that he was subject to the same rules and regulations as all other inmates.[6] *Id.* ¶ 3.  Defendant Chutty also states that

---

[5] Defendants' papers also contain the affidavit of Ronald Nelson, Deputy Superintendent of Programs at Auburn Correctional Facility, who states that the position of religious "facilitator" carries with it no special privileges or immunities. (Dkt. No. 39).

[6] The court notes that this comment appears to refer to the incident in which plaintiff attempted to take his legal work into the kitchen, and he was charged by defendant Calscibetta with possessing property in an unauthorized area. Plaintiff's Ex. E.  This misbehavior report was issued December 15, 2001, and of all the misbehavior reports discussed in this case, it was the only one in which plaintiff was found guilty.  Defendants have submitted the investigative reports that were created regarding the grievance that plaintiff filed over this incident. Defendants' Exs. A, B.  This is the grievance that plaintiff alleges started the alleged retaliation.  Plaintiff apparently was getting copies of legal papers made in the kitchen, and this was against the rules of the facility. Defendants' Ex. B.  Exhibit B is a report authored by Lieutenant R. Head, and concludes by stating that plaintiff should be transferred because he believed that he was entitled to special privileges because he was a "facilitator" , and that this issue would not "go away." *Id.*  The report also concluded that defendant Calscibetta was not harassing plaintiff by charging him with the misbehavior.

the search of plaintiff's cell was based on "confidential information" in the form of a copy of the "inflammatory petition" that called for "allegations and uprising" against prison officials. *Id.* at ¶ 4. Defendant Chutty also states that no one who was authorized to attend the November 3, 2001 feast was turned away. *Id.* ¶ 7.

However, plaintiff claims that these restrictions and the cancellation of the event in question were imposed because of his religion, or in retaliation for either the exercise of his religion or because he filed complaints against corrections officers. Plaintiff's claims seem more in the nature of retaliation as a form of religious discrimination. There appears to be a question of fact regarding the defendants' motivations for these restrictions, although there are more allegations in the complaint regarding the alleged retaliation for his complaints against corrections officers than there are regarding the claim that he was retaliated against because of his religion.

With respect to defendant Chutty's affidavit, although he claims that the search of plaintiff's cell was performed because there was confidential information in the form of an "inflammatory petition", the court would point out that the charges against plaintiff were dismissed because the only things found in plaintiff's cell were affidavits regarding a law suit. There was no mention of confidential information in the disciplinary documents, and if in fact defendants had an

"inflammatory petition" in their possession, it is difficult to believe that plaintiff's charges would have been dismissed. The court does not make any conclusions regarding this issue, other than finding that there are questions of fact to resolve.

Thus, although this court finds that the claims of restrictions on plaintiff's religious events do not rise to the level of constitutional violations, the court also finds that there are questions of fact regarding these claims to the extent that they support plaintiff's allegations of retaliation, either for his religious beliefs or for the exercise of his right to file grievances.

## 5.    __Miscellaneous Allegations__

Defendants also state that plaintiff mentions a denial of access to courts as well as claiming that he was subjected to cruel and unusual punishment. Plaintiff merely states that defendant Calscibetta confiscated plaintiff's legal materials in an attempt to deny plaintiff access to courts. Complaint ¶ 26. As defendants point out, to the extent that this statement can be interpreted as raising a separate claim, it may be dismissed. In order to state a claim for denial of access to courts, a plaintiff must show actual injury as a result of the deficient access to courts. *Lewis v. Casey*, 518 U.S. 343 (1996). In this case, plaintiff alleges no actual injury as a result of defendant Calscibetta's alleged actions. Thus, to the extent that the complaint may be read as attempting to raise an access to courts claim, it may be dismissed.

17

With respect to the Eighth Amendment, cruel and unusual punishment takes the form of "unnecessary and wanton infliction of pain" by prison officials. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Under the Eighth Amendment, an inmate has the right to be free from conditions of confinement that impose an excessive risk to the inmates health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Plaintiff in this case has not specified what actions by defendants constitute cruel and unusual punishment.  Thus, to the extent that plaintiff inserts such a claim in the complaint, it may be dismissed.

Finally, defendants have interpreted the complaint as raising due process claims.  However, a review of the complaint shows that plaintiff is only alleging that defendants falsely accused him of misbehavior.  Since most of the disciplinary charges were dismissed, and plaintiff has not sued any of the officers responsible for the disciplinary hearings, plaintiff does not have a procedural due process claim. As stated above, false misbehavior reports, in themselves do not rise to the level of a constitutional violation. *Freeman v. Rideout, supra.*  Thus, to the extent that the complaint might be interpreted to raise due process violations, these claims may be dismissed.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that defendants' motion for summary judgment (dkt. no.

18

37) be **GRANTED** to the extent that plaintiff claims religious discrimination,

Eighth Amendment violations, denial of access to courts, and due process

violations, and it is

 **RECOMMENDED,** that defendants' motion for summary judgment be

**DENIED** in all other respects.

 Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have

ten days within which to file written objections to the foregoing report.  Such

objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO**

**THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v.*

*Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: September 14, 2004

           _____

           Hon. Gustave J. DiBianco
           U.S. Magistrate Judge